## BAKER v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. November 11, 1922.)

### No. 3902.

1. **Carriers ⬤⟹37—Connecting carrier not liable for violation of Twenty-Eight Hour Law by preceding carrier.**

   A connecting carrier is not liable under Twenty-Eight Hour Law, § 3 (Comp. St. § 8653), for the detention of live stock in the cars without unloading for feed, water, and rest for longer than the prescribed time by the carrier from which it receives the shipment and before it has any control over it.

2. **Carriers ⬤⟹37—No illegality in arrangement for transfer of stock shipments between connecting carriers, and connecting carrier not liable until delivered.**

   There is no illegality in an arrangement by which a railroad company, which owns stockyards and does the switching therein, retains control of shipments of live stock until they are taken from the yards and delivered to a connecting carrier, and the law does not make the latter responsible for care of the stock until so delivered.

In Error to the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Action at law by the United States against James A. Baker, receiver of International & Great Northern Railway. Judgment for plaintiff, and defendant brings error. Reversed.

Ned B. Morris, of Houston, Tex. (Larry W. Morris, Dabney & King, and Ned B. Morris, all of Houston, Tex., on the brief), for plaintiff in error.

Randolph Bryant, U. S. Atty., of Sherman, Tex.

───────────────────

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. This was an action to recover from the plaintiff in error, the receiver of the International & Great Northern Railway Company (herein called the defendant), a penalty for an alleged violation by him of the statute which forbids the confining, without unloading for rest, water, and feeding, for more than the specified time, of animals transported in interstate commerce. 34 Stat. 607 (Comp. St. §§ 8651–8654). The petition alleged a shipment, in two described cars, of cattle from Harrell, Ark., to San Antonio, Tex.; that by written consent of the owner or person in control of the cattle the time of their confinement was extended to 36 hours; "that said animals were loaded into said cars at Harrell, Ark., at 6:30 o'clock p. m. on September 11, 1920, and were by the Chicago, Rock Island & Pacific Railroad, the St. Louis Southwestern Railroad, the Texas & Pacific Railway, and the defendant transported therefrom in the said cars to Longview, Tex., where they arrived at 10 o'clock a. m. on September 13, 1920; that said animals were continuously confined in said cars by the Chicago, Rock Island & Pacific Railroad, the St. Louis Southwestern Railroad, the Texas & Pacific Railway, and the defendant during their transportation by said carriers from Harrell, Ark., to Longview, Tex., for 39 hours and 30 minutes, without the said Chicago, Rock Island & Pacific Railroad, the St. Louis Southwestern Railroad, the Texas & Pacific Railway, and the defendant, or either of them, having unloaded said animals in a humane manner during the course of their transportation from Harrell, Ark., to Longview, Tex., as aforesaid, into properly equipped pens for rest, water, and feeding; that at the time the said animals arrived at Longview, Tex., as aforesaid, the said animals had been knowingly and willfully confined continuously by the defendant in said cars, in violation of the provisions of the aforesaid act, for a longer period than 36 consecutive hours, to wit, 39 hours and 30 minutes, without unloading the same in a humane manner into properly equipped pens for rest, water, and feeding for a period of at least 5 consecutive hours; and that the defendant was not prevented from unloading the said animals by storm or other accidental or unavoidable cause, which could not have been anticipated or avoided by the exercise of due diligence and foresight." The allegations of the petition were put in issue.

A jury having been waived, the case was submitted to the court on the following agreed statement of facts:

"In this case it is agreed that the following facts are true: The two carloads of cattle about which this suit is pending originated at Fordyce, Ark., on the Cotton Belt Railroad. The Cotton Belt carried these cattle to Harrell, where they were unloaded. The cattle moved this far under local billing from Fordyce to Harrell, naming San Antonio as destination. The cattle were reloaded in the same cars at Harrell, Ark., at 6:30 p. m. September 11, 1920, and moved from this point over the Rock Island, Missouri Pacific and Texas & Pacific to Longview Junction under 36-hour release, reaching the yards at 7:25 a. m. September 13, 1920; were unloaded at 10 a. m. same day; reloaded same day at 5 p. m. and moved out of Longview Junction over the International & Great Northern Railroad at 9 p. m. same day. The cattle moved from Harrell, Ark., to San Antonio, Tex., under a through waybill. The yards

at Longview. Junction are what may be termed joint yards, operated exclusively by the Texas & Pacific Railway Company under a contract with the International & Great Northern Railway Company to the effect that the International & Great Northern will be billed in due order for 25 per cent. of the joint charges, which it pays. In calculating demurrage, car is considered delivered International & Great Northern when it reaches Longview yards. The International & Great Northern Railway Company has no switch engines in the Longview yards; does no switching, but its trains are all made up by the Texas & Pacific switch engines and switch crews. The International & Great Northern has no authority over the switch crews in the Longview yards. There was no delay in shipment after leaving Longview."

Following the overruling of a motion of the defendant for judgment in his favor, there was judgment against him for a penalty of $100 and the costs. That ruling of the court is duly presented for review.

[1] The agreed statement of facts shows that the violation of the statute was consummated and was a thing in the past before the defendant acquired any possession, dominion, or control of the cattle or of the cars in which they were carried. Instead of it being made to appear that he or any one subject to his orders participated in confining the cattle beyond the time permitted, it was disclosed that he did not possess the power or means of preventing the commission or continuance of the wrong. It was shown that he had no authority over the agencies which were responsible for any part of the unlawful confinement. By the terms of section 3 of the above-cited act (Comp. St. § 8653) one is not subject to the penalty prescribed unless he "knowingly and willfully fails to comply with the provisions of the two preceding sections." One cannot be guilty of a breach of duty before he has an opportunity to perform it. The purpose of the statute is to penalize voluntary participation by a carrier in a forbidden confinement of animals. It does not undertake to make one carrier responsible for what, without his authorization, knowledge, or consent, is done by another carrier while the latter is in exclusive control of the shipment.

[2] There was no illegality in the arrangement in pursuance of which the Texas & Pacific Railway Company, which brought the cattle to Longview Junction, retained dominion and control of them and the cars containing them after they reached Longview yards and until completion of the switching required to enable the shipment to proceed from that place over the line operated by the defendant. It was competent for the connecting carriers so to provide for the details involved in effecting an interchange of freight at a junction point. The law did not charge the defendant with responsibility for the shipment upon its reaching Longview yards, or before the defendant acquired actual possession and control. The effect of the court's ruling was to subject the defendant to a penalty for wrongful conduct not participated in by him. We are of opinion that that ruling was erroneous.

Because of that error the judgment is reversed.